No. 96-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

GEORGE K. POSPISIL,
    Petitioner and Respondent,

    and

JOYCE M. POSPISIL,
    Respondent and Respondent.

RUBY POSPISIL, a/k/a
RUBY L. POSPISIL,
    Plaintiff and Appellant.

FILED

MAY 29 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Tenth Judicial District,
                In and for the County of Fergus,
                The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Vicki Knudsen, Roundup, Montana

        For Respondent:

            Carl G. Debelly, Lewistown, Montana (George K. Pospisil); Virginia Bryan,
            Wright, Tolliver & Guthals, Billings, Montana (Joyce M. Pospisil)

Submitted on Briefs: February 20, 1997

Decided: May 29, 1997

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

This is an appeal by Ruby Pospisil (Ruby) from the District Court's June 11, 1996 Findings of Fact and Conclusions of Law and June 20, 1996 Final Decree and Judgment dissolving the marriage of her son George to Joyce, dismissing Ruby's quiet-title action and distributing the marital property. The marital property included a one-half interest in ranch property and improvements, a substantial portion of which was subject to a contract for deed between Ruby (and Ruby as successor to her deceased husband) as sellers and George as purchaser. We affirm.

Ruby raises two issues on appeal:

1. Is the contract for deed dated July 1, 1982, a valid contract?

2. Did the trial court err in determining that Joyce was entitled to receive notice of default under the contract for deed when she was not a party to the contract?

Background

In 1976, Ruby and her husband Albert (now deceased) gifted a 160-acre parcel of ranch land to George who took possession subject to certain Farm Credit Service indebtedness. At the same time, Ruby and Albert gifted an undivided 15% of an additional

2

ranch to George. In 1982, Ruby and Albert sold the remaining 85% of their ranch land holdings to George under a contract for deed. George assumed all of the indebtedness and, while he paid third-party creditors, he never made any payment to his parents on the contract for deed. Albert died in 1984 and his tenancy-in-common interest in the contract for deed passed to Ruby.

In 1978, between the time of the 1976 gifts and the 1982 contract for deed, George married Joyce. They moved onto the ranch and lived together operating the livestock ranch and grain farm. George and Joyce borrowed extensively against the ranch real estate holdings over the course of the marriage and Ruby consented to the use of the ranch real estate as collateral for the loans, including a loan work-out in 1987, designed to prevent foreclosure. In 1988, George quit claimed all of his interest in the ranch real estate holdings to Joyce to protect the land from creditors in a suit filed against George in Oregon. The quit-claim deed was recorded in 1988 and in 1992 Joyce recorded a homestead declaration.

In early 1994, Joyce left the ranch due to deteriorating marital relations and thereafter Ruby named George as her attorney in fact under a power of attorney. George filed a dissolution of marriage action in Fergus County in May 1994, seeking a divorce from Joyce. A mutual restraining order was entered. In December 1994, Ruby contacted the bank handling the escrow for the contract for deed and demanded the escrow be terminated because George had never made any payments. No notice was given to Joyce or to George, although George agreed that the escrow should be closed and the contract for deed forfeited.

3

In March 1995, Ruby filed a quiet-title action in Fergus County with respect to the farm and ranch property and improvements which were the subject of the contract for deed. The quiet-title action and the dissolution were subsequently consolidated. The District Court dismissed Ruby's quite title action and this appeal followed.

## Discussion

As to the first issue--the validity of the contract for deed--neither Ruby nor Joyce argue on appeal that the contract for deed between George and his parents is invalid. Accordingly, we decline to address this issue further.

As to the second issue--was Joyce entitled to receive notice of default under the contract for deed when she was not a party to the contract--we hold that the District Court did not err.

George quit claimed all of his interest in the land (which at the time of the conveyance was a purchaser's interest under a contract for deed) to Joyce, and the quit-claim deed was recorded. The contract for deed does not prohibit assignment by the buyer. Accordingly, George having transferred his interest in the agreement to his wife, Joyce stepped into George's shoes as the buyer under the contract for deed. Section 11 of this agreement provides that the buyer is entitled to written notice and 60 days in which to cure any default in any of the payments to be made under the contract before demanding return and closure of the escrow. Furthermore, Section 14 of this agreement provides that the terms of the contract "extend to and are binding on the heirs, devisees, personal representatives and

4

assigns of the respective parties hereto." Accordingly, the very terms of the contract for deed which the parties concede is valid, unambiguously required that Ruby provide notice of default to Joyce so that Joyce, as the buyer through George, would have the opportunity to cure the default and avoid forfeiture of the contract.

Moreover, equity dictates the result reached by the trial court. George and Joyce were married for 17 years. Joyce contributed to the marital estate and to the farm and ranch operations. Joyce and George used the real property subject to the contract as loan collateral with Ruby's consent and, while she claims to have not known about George's conveyance of the property to Joyce, Ruby was obviously aware of Joyce's financial interest in the property through these extensive loan proceedings. Ruby never pressed to have the payments made under the contract for deed until after the divorce proceedings started. Ruby then conducted the forfeiture with George's knowledge and consent but without any notice to Joyce. George was more than willing to have Joyce assume his buyer's status under the contract for deed at a time when that was of benefit to him and to protect the land from his judgment creditors. He was then equally willing to join in frustrating the interest in Joyce that he created when to do so would work to his financial advantage. The contract for deed property was a major marital estate asset.

The District Court found that Ruby's belated quiet-title action "was and is a conspiratorial sham between son and mother to deplete the marital estate to the wife's detriment after a marriage of 17 years." We have found no basis in the record to conclude

5

otherwise. Quiet title is an equitable proceeding and it is axiomatic that "equity abhors forfeiture." Roberts v. Morin (1982) 198 Mont. 233, 238, 645 P.2d 423, 426. *See also* § 28-1-104, MCA. Moreover, courts sitting in equity are empowered to determine all the questions involved in the case and to do complete justice; this includes the power to fashion an equitable result. Blaine Bank of Montana v. Haugen (1993), 260 Mont. 29, 35, 858 P.2d 14, 18 (citation omitted). Under the circumstances, it would have been wholly inequitable for Ruby to forfeit Joyce's interest without any notice to her and without giving her an opportunity to cure the contract default. The court can hardly be faulted for fashioning an equitable result under the facts of this case. *See generally* Roberts, 645 P.2d 423.

Finally, Ruby argues that under § 70-20-115, MCA, Joyce was not entitled to notice of default. This statute merely defines who is a purchaser under a contract for deed and mandates that legal notices required by statute be given to purchasers as defined. This section of the Montana Code has nothing to do with Ruby's contract or equitable obligation to give notice under the defaulted agreement at issue here.

We hold that the trial court's resolution of this issue was equitable under the circumstances.

Affirmed.

We Concur:

_____
Justice

6

_____
Jeffrey Treiweils

_____
Jim Regnier

_____
W. William Leaphart
Justices